MOONEY *v.* ALNETT.

4-3386

Opinion delivered March 5, 1934.

'*J. E. Gregson* and *J. Loyd Shouse,* for appellant.

*W. J. Tate, Tex Coxsey* and *Festus O. Butt,* for appellee.

HUMPHREYS, J. This suit was instituted in the chancery court of the eastern district of Carroll County by appellees against appellant to set aside a deed of date January 5, 1933, executed by Mrs. E. W. Mooney to appellant, her husband, to about twenty or twenty-five acres of land in said county upon which they resided, on the ground that the same was procured through the undue influence of appellant over his wife, Mrs. E. W. Mooney, at a time when she was not mentally competent to transact business.

Appellant filed an answer, admitting the execution of the deed, but denying that he procured same through undue influence over his wife at a time when she was incompetent to transact business.

The cause was submitted to the court upon the pleadings and testimony, resulting in a decree cancelling the deed on the grounds alleged in the complaint, from which is this appeal.

About twenty-six years ago, Mr. Mooney married a widow, the mother of two daughters. One of the daughters died, and the other married Mr. Alnett, who joined her in this suit. Mrs. Mooney had been blind for about

twelve years when she died, but she had learned to keep house notwithstanding her affliction. Mr. Mooney was kind and attentive to her, and they lived happily together during their entire married life. Appellees resided with them a part of the time. They all lived in Larned, Kansas, until they moved to Arkansas in the spring of 1926. Mrs. Mooney received a small estate from her first husband, from which she realized $250 in cash. In 1924 or 1925 Mr. Mooney inherited $2,500 from a brother. Mr. Mooney purchased the tract of land in question after coming to Arkansas, and had the deed made to Mrs. Mooney, so that if he should die she would not be disturbed. They were afterwards advised that he would lose the home in case Mrs. Mooney died first, and it was agreed between them that she would convey the home to him, but she neglected to do so until both became ill with light cases of "flu" in January, 1932. On January 5, 1932, while both were in bed sick, appellant sent for a justice of the peace, who prepared a deed conveying the land in question, upon which they had been and were residing as their home. Mrs. Mooney, being blind, signed same by mark, which signature was witnessed by two men who came in about the time she signed same. One of them thought she was not able to transact business and the other expressed no opinion about it. When appellant sent for the justice of the peace, Mrs. Mooney got the old deeds out of the trunk for him to use as a guide in drafting the new deed when he should arrive. After the execution of the deed, the justice of the peace handed it to Mr. Mooney, who later gave it to Mrs. Mooney to put in the trunk, and it remained where she put it until after her death some fourteen months later. Appellant then recorded it.

The justice of the peace, J. W. Ash, testified, in substance, that both Mr. and Mrs. Mooney were sick in bed when he prepared and she signed the deed; that she sat on the edge of the bed when she signed by mark and acknowledged same; that he did not fill out the blank relative to dower and homestead and certify to that part of it because Mr. Mooney was present; that the only persons present were Mr. Mooney, Mrs. Stewart and him-

self; that he would not have had her sign the deed if he had thought she was unable to transact business; that he saw nothing out of the ordinary except that both were sick in bed.

Mrs. Stewart testified that she was a neighbor taking care of Mr. and Mrs. Mooney. In her first statement, she said she was in and out when the deed was being prepared and signed, but, in her rebuttal testimony, she said that she was present all the time; that the justice of the peace did not ask Mrs. Mooney if she executed the deed of her own free will and accord; that Dr. W. L. Watson told her Mrs. Mooney's temperature was running 104½ and that she did not think with this much fever; she was competent to transact business; that she did not regard Mrs. Mooney either crazy or delirious; that the night before the deed was signed she was in the adjoining room and heard Mr. Mooney ask Mrs. Mooney to make a deed to him and heard her say she did not want to do so.

Dr. W. L. Watson testified that he was called to see Mrs. Mooney in January, 1932, and found both her and her husband in bed with light attacks of ''flu''; that he did not remember taking their temperature; that they responded to his treatment, and recovered in a short time; that he did not tell any one that Mrs. Mooney's temperature was running 104½ degrees; that he found nothing else the matter with them.

Mr. Mooney testified, relative to the sick spell of himself and wife, that they were in bed a short time with light attacks of. ''flu'' from which both soon recovered; that, while they were sick, Mrs. Mooney executed a deed to him for the twenty or twenty-five acre home he had bought and put in her name of her own free will and accord, without any undue influence by him, and for fear she might die. He denied having any conversation with her about it the night before it was executed.

The record reflects that during their illness a number of neighbors called and some of them were of the opinion that, owing to Mrs. Mooney's illness, she was not competent to transact business, and others thought she was. Also that Mrs. Mooney wrote for appellees to come to

them on account of their illness, which they did. They remained with them for some fourteen or fifteen months or until a short time after the death of Mrs. Mooney. Also that they recovered and that Mrs. Mooney thereafter was sound in mind and body until she died.

Mrs. Elizabeth Alnett testified that, after her mother got well, she claimed she had never made a deed when she asked her whether she had done so.

In our opinion, this testimony fails to show that Mrs. Mooney was incompetent to transact business when she executed the deed, or that she was unduly influenced to do so by appellant. It was the just and equitable thing for her to do as he had paid for the property with his own inheritance, and had been devoted and kind to her during her long affliction. Further, the execution of the deed was but the fulfillment of Mrs. Mooney's avowed purpose after she found out that in case of her death, as the title stood, her husband would lose the home.

On account of the error indicated, the decree is reversed, and the cause is remanded with directions to reinstate the deed and dismiss the complaint for want of equity.